## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**MARK STEVEN BUSH JR.**,

      **Movant,**

v.                                    **Case No. 3:17-cv-03875**
                                     **Criminal Case No. 3:16-cr-00227-1**

**UNITED STATES OF AMERICA**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 188), Movant's Supplemental Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECFF No. 283), and Respondent's Answer and Motion to Dismiss. (ECF No. 334).[1] This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined from a thorough review of the record that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing.  Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion and Supplemental Motion to

---

[1]  The citations in this PF&R reference Movant's criminal case: *United States v. Bush et al*, No. 3:16-cr-00227-1 (S.D.W. Va. 2016).

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; **GRANT** the Motion to Dismiss; **DISMISS** this civil action, with prejudice; and **REMOVE** this matter from the docket of the Court.

## I.     Factual and Procedural Background

On December 21, 2016, a federal grand jury, sitting in the Southern District of West Virginia, returned an eleven-count indictment alleging in Count One that Petitioner, Mark Steven Bush Jr. ("Bush"), had joined a conspiracy which had as its object the distribution of a quantity of heroin and oxymorphone in violation of 21 U.S.C. § 846 and § 841(a)(1). (ECF No. 1 at 1-2). The indictment further alleged that Bush's conduct as a member of the conspiracy involved 100 grams or more of heroin. (*Id.* at 2). The indictment additionally charged Bush with two counts of knowingly and intentionally distributing a quantity of heroin, and one count of possessing with the intent to distribute a quantity of heroin, all in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 4, 9, 12).

On May 8, 2017, Bush entered into a plea agreement and pled guilty in open court to the charge contained in Count One of the indictment. (ECF Nos. 119, 121, 122). In exchange for Bush's guilty plea, the United States agreed not to file an information under § 21 U.S.C. 851 and to dismiss the remaining charges against Bush. (ECF No. 122 at 2). The plea agreement contained an appeal waiver in which Bush agreed to waive his right to appeal his sentence or conviction under any ground, except on the basis that the sentence exceeded the statutory maximum. (*Id.* at 4). Bush also waived his right to seek post-conviction relief under 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel. (*Id.*). The plea agreement provided that the matter of sentencing would remain within "the sole discretion of the Court" and the United States had "made no representations or promises as to a specific sentence." (*Id.* at 5). The agreement also

included an acknowledgement section which stated:

> I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this six-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(ECF No. 122 at 6). Bush signed the agreement underneath the acknowledgment section, and initialed every page of the plea agreement. (*Id*. at 1-6). The plea agreement contained an attached stipulation of facts in which Bush conceded that there existed a factual basis for his guilty plea. (*Id*. at 7). Specifically, Bush stipulated that between November 2014 and June 2016, he entered into a conspiracy to distribute 100 grams or more of heroin. (*Id*.). Bush conceded that at least 700 grams of heroin could be attributable to him for sentencing purposes, while the United States posited that the total amount of heroin attributable to Bush was as much as 30 kilograms. (*Id*. at 8).

Bush's plea hearing was held in front of the United States District Court for the Southern District of West Virginia ("the Court") on May 8, 2017. (ECF No. 218). At the hearing, the Court engaged in an extended discussion with Bush regarding his guilty plea. The Court first established that Bush was competent and capable of entering an informed plea. (*Id*. at 2-3). The Court then began the following discussion regarding Bush's perspective on his attorney's performance:

> The Court: Have you had enough time to discuss your case with your lawyer?
>
> Bush: Yes, sir.

> The Court: Has he been able to answer your questions about what you should do?
>
> Bush: Yes, sir.
>
> The Court: Are you completely satisfied with the legal advice he's given you?
>
> Bush: Yes, sir.

(ECF No. 218 at 3-4). The Court inquired of Bush's counsel if he had enough time to investigate the case and discuss it with Bush and if Bush had been cooperative. Bush's attorney responded affirmatively to each question. (*Id.* at 4). Bush's counsel then summarized the terms of the plea agreement, noting that it exposed Bush to a statutory minimum sentence of five years in prison with a maximum sentence of 40 years in prison. (*Id.* at 5). Bush's attorney explained that Bush understood that the Court was not bound by the parties' stipulation, and if some or all of the factual stipulations were not accepted by the Court, Bush would have no right to withdraw from his guilty plea. (*Id.* at 7). Bush's attorney further noted that "the matter of sentencing is within the sole discretion of the Court," and that the United States would have the opportunity "to present evidence and arguments" at sentencing. (*Id.* at 8). After Bush's attorney summarized the terms of the plea agreement, the Court engaged in a colloquy with Bush regarding his understanding of the plea agreement:

> The Court: Mr. Bush, do you understand what this agreement does and what it requires of you?
>
> Bush: Yes, sir.
>
> The Court: Do you understand that part of the agreement is a stipulation of facts that you signed that could be used against you for this plea as well as for sentencing or even trial?
>
> Bush: Yes, sir.
>
> The Court: Did you go over each of the paragraphs of the plea agreement

> with your lawyer before you signed it?
>
> Bush: Yes, sir.
>
> The Court: Do you want me to accept it?
>
> Bush: Yes, sir.

(ECF No. 218 at 9-10). The Court then fully explained the nature of the charge to which Bush was pleading guilty, and what the United States would be required to prove if the case were to go to trial. (*Id.* at 11-12). Bush affirmed that he had gone over the stipulation of facts contained in his plea agreement with his attorney and that it was true and accurate. (*Id.* at 13-15). The Court specifically asked Bush if the stipulation that his conduct in the conspiracy involved at least 700 grams was accurate. Bush asserted that it was indeed correct. (*Id.* at 15-16).

The United States then called Detective Adrian Rosario to the stand. Detective Rosario testified that between November 2014 and June 2016, he had conducted an investigation into a drug trafficking organization of which Bush was a member. (*Id.* at 17). Detective Rosario asserted that during the course of the investigation, he learned Bush directed other individuals to sell heroin on his behalf, instructed individuals to rent automobiles and property in furtherance of the conspiracy, and organized trips for the purpose of bringing heroin from Detroit into the Southern District of West Virginia. (*Id.* at 17-18). Detective Rosario described a search warrant executed on a property utilized by Bush, which resulted in the discovery of 85 grams of heroin and four firearms that belonged to Bush. (ECF No. 218 at 19).

Following Detective Rosario's testimony, the Court again spoke to Bush. Bush confirmed that Detective Rosario's testimony was accurate. (*Id.* at 21). The Court questioned Bush's attorney, and he asserted that he was convinced there were no

meritorious legal defenses to the charge. (*Id.*). The Court determined that there existed a sufficient factual basis to accept the guilty plea. (*Id.*). The Court again engaged in a discussion with Bush regarding his understanding of the potential sentence he could receive as a result of his guilty plea:

> The Court: Do you understand you're pleading guilty to an offense involving 100 grams or more of heroin?
>
> Bush: Yes, sir.
>
> The Court: As a result of that, do you understand that you expose yourself to a mandatory minimum sentence of at least five years of imprisonment, with a maximum sentence of up to 40 years of imprisonment?
>
> Bush: Yes, sir
> ...
>
> The Court: Now, have you and your lawyer discussed the sentencing guidelines and how they might apply in your case?
>
> Bush: Yes, sir.
>
> The Court: Do you understand that the Court cannot determine the guideline range for your case until a presentence report is done and both sides have a chance to review it and challenge it if either side thinks it's wrong?
>
> Bush: Yes, sir.
>
> The Court: Do you understand that the sentence I may impose could be different from any estimate your lawyer has given you?
>
> Bush: Yes, sir.
>
> The Court: Do you understand that although I have to consider the sentencing guidelines, I have the authority to impose a sentence more severe or less severe than the guidelines would call for?
>
> Bush: Yes, sir.
> ...
>
> The Court: Do you understand that even if you do not like the sentence I impose, you will still be bound by this guilty plea and have no right to withdraw it?

> Bush: Yes, sir.

(ECF No. 218 at 21-24). The Court also explained at length the rights Bush was forfeiting by admitting guilt, including the right to go to trial and have the case proven beyond a reasonable doubt. (*Id.* at 24-28). The Court determined that Bush was aware of the rights he forfeited in entering a guilty plea and asked:

> The Court: Now, knowing all of this, do you still want to plead guilty?
>
> Bush: Yes, sir.
>
> The Court: Has anyone forced you or threatened you or talked you into pleading guilty against your will?
>
> Bush: No, sir.
>
> The Court: Are you acting voluntarily and of your own free will in entering this guilty plea?
>
> Bush: Yes, sir.
>
> The Court: Is pleading guilty your own idea?
>
> Bush: Yes, sir.
>
> The Court: Has anyone promised you something or told you anything different from what we've discussed here in court today to get you to plead guilty?
>
> Bush: No, sir.
>
> The Court: All right. I find your guilty plea is voluntary. At this time do you have any questions or second thoughts about pleading guilty?
>
> Bush: No, sir.

(ECF No. 218 at 28-29). Bush and his counsel then signed and executed the guilty plea, and the Court accepted it. (*Id.* at 29). The Court scheduled a sentencing hearing for August 14, 2017. (*Id.*). On August 7, 2017, Bush's counsel submitted a sentencing memorandum in which he disputed both the amount of drugs imputed to Bush in the Presentence

Investigation Report ("PSR"), and the Base Offense Level which resulted from that imputation. (ECF No. 156 at 6). Counsel additionally argued that the criminal history category of III to which Bush was assigned misrepresented the severity of Bush's criminal history as his prior convictions were non-violent and due to drug addiction. (*Id.* at 5-6).

Bush's sentencing hearing was held on August 14, 2017. (ECF Nos. 163, 207). At the hearing, the Court asked Bush's counsel whether there was any reason why sentencing should not take place on that day. Bush's attorney responded that there was not. (ECF No. 207 at 3). The Court then spoke directly to Bush and asked him if he had the opportunity to read the PSR and discuss it with his attorney. Bush answered affirmatively. The Court asked Bush if he understood the contents of the report and he answered "[y]es, sir." (*Id.* at 4).

The sentencing hearing was contested as to the drug quantity attributable to Bush for the purposes of calculating his applicable United States Sentencing Guidelines ("Guidelines") sentence range. (*Id.*). The United States presented several witnesses who testified regarding Bush's involvement in the conspiracy. The witnesses explained that, under the direction of Bush, they had assisted in the drug distribution conspiracy by, among other things, purchasing cars and renting apartments that were used in furtherance of the conspiracy, arranging for proceeds from the drug sales to be sent to Bush, and transporting controlled substances from Detroit to Huntington. (*Id.* at 12-21, 74-75, 94-95). The witnesses additionally testified that they had on several occasions seen Bush with a large quantity of heroin, which he was preparing for sale as individual units. (*Id.* at 8-10, 79-80, 96-97). Bush's counsel cross-examined the witnesses and contrasted their testimony at the hearing with statements made before the grand jury, as well as suggesting that their favorable testimony for the United States was motivated by the hope

of avoiding criminal charges. (ECF No. 207 at 41-43, 47-48, 86-87, 104-105).

The United States also called Detective Rosario to the stand, and he testified regarding a social media post made by an associate of Bush, which revealed the name of a witness who testified during the grand jury proceedings in Bush's case. (*Id.* at 119-20). Detective Rosario believed that Bush arranged the social media post in order to intimidate the witness and prevent her from providing further unfavorable testimony. (*Id.* at 121).

Following the testimony and arguments from both parties, the Court concluded that a four-point increase in Bush's adjusted offense level under the Guidelines was warranted for Bush's leadership role in the conspiracy. (*Id.* at 137). The Court further determined that the testimony did not establish that the conspiracy involved 26,000 kilograms of marijuana equivalency as the PSR recommended, but found that it did establish that the conspiracy involved at least 3,000 kilograms of marijuana equivalency, resulting in a base offense level of 32. (*Id.* at 141-42). The Court determined that the United States had not succeeded in showing that Bush had intended to intimidate a witness sufficient for a sentence enhancement. (*Id.* at 142-43). The Court then concluded that Bush had a total offense level of 35 due to the base offense level of 32, a two-point enhancement for possession of a dangerous weapon, the four-point enhancement for being a leader in the conspiracy, and a three-level decrease due to Bush's acceptance of responsibility and guilty plea. (ECF No. 207 at 145). As Bush had a criminal history category of III, the Court concluded that the Guidelines sentencing range for his offense was 210-262 months in prison. (*Id.* at 146). The Court sentenced Bush to 210 months in prison, with four years of supervised release. (*Id.* at 151). Pursuant to a motion by the United States, the Court dismissed the remaining charges contained in the indictment. (*Id.* at 154).

On August 15, 2017, Bush sent a letter to the Honorable Robert C. Chambers, who presided over Bush's guilty plea hearing and sentencing. (ECF No. 286 at 5). In the letter, Bush asserted that he had previously sent letters to the Court explaining that his counsel had "mislead and lied" to him regarding the sentence he would receive. (*Id.*). Bush stated that he had "fired" his attorney in a prior letter, and he wished to have his guilty plea invalidated. (*Id.*). Bush also requested that a new attorney be appointed to represent him on appeal, and he filed a contemporaneous notice of appeal. (*Id.* at 6; ECF No. 181). On August 22, 2017, Judge Chambers responded to Bush's letter, informing Bush that his request for appeal had been docketed. Judge Chambers advised Bush that "[a]s to the letter dated August 15, 2017 complaining about your lawyer, I am returning it to you." (ECF No. 286 at 12). Judge Chambers told Bush that the relief he requested, a new attorney and resentencing, was unavailable. Judge Chambers further noted "[y]ou told me at sentencing that you were satisfied with your counsel." (*Id.*).

On August 24, 2017, Bush's trial counsel submitted a notice of appeal and docketing statement. *United States v. Mark Bush Jr.*, Case No. 17-4541, Fourth Circuit Court of Appeals, Document No. 6-1. Counsel stated that Bush wished to challenge the Court's factual finding regarding the credibility of a witness at sentencing and the effect this credibility determination had on Bush's Guidelines calculation. *Id.* at 2. Bush's counsel also submitted a transcript request form on Bush's behalf. *Id.* at Document No. 6-2.

On the same date, Bush submitted the instant Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 188). In the motion, Bush asserts that he was "mislead and lied to from [sic] my counsel." (*Id.* at 3). Bush argues he was wrongfully induced into entering the guilty plea as his

attorney misinformed him regarding the sentence he would receive. (*Id.*). On September 19, 2017, Bush was appointed new counsel to represent him on appeal. (ECF No. 205).

On October 26, 2017, the United States submitted a Response in Opposition to Bush's § 2255 motion, arguing that the motion should be denied and dismissed without prejudice as his direct appeal was still pending. (ECF No. 225 at 2). On January 18, 2018, Bush's appellate counsel submitted a brief to United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), arguing that Bush's sentence should be vacated. *Bush*, Case No. 17-4541, at Document No. 31. Bush first argued that his guilty plea was invalid because he was "unfairly induced" into entering it with the promise that his base offense level under the Guidelines would be lower than what was ultimately calculated by the Court. *Id.* at 14. Bush additionally asserted that the United States "unfairly influenced" the Court by alleging that Bush had distributed over 26,000 kilograms of heroin, and that the Court's determination regarding the quantity attributable to Bush was incorrect. *Id.* at 16-17.

On February 8, 2018, the United States submitted a Motion to Dismiss, arguing Bush's appeal should be dismissed as he voluntarily waived his right to appeal in his plea agreement. *Id.* at Document No. 40 at 6. On April 5, 2018, the Fourth Circuit issued an Order denying Bush's appeal. (ECF No. 248). The Fourth Circuit determined that "[u]pon review of the plea agreement and the transcript of the Fed. R. Crim. P. 11 hearing, we conclude that Bush knowingly and voluntarily waived his right to appeal." (*Id.* at 1). The Fourth Circuit concluded that as the issues raised by Bush fell within the scope of the appellate waiver, the appeal should be dismissed. (*Id.*).

On September 19, 2018, Bush filed a Motion for Return of Seized Property, arguing that the United States had illegally seized an automobile owned by Bush. (ECF No. 275).

The United States responded on October 11, 2018, asserting that the automobile in question, a 2014 Dodge Charger, was in fact owned by a different member of the conspiracy which Bush was convicted of joining. (ECF No. 281 at 1-2).

On October 12, 2018, Bush filed a Supplemental Motion to Vacate, Set Aside or Correct Sentence under § 2255, which was accompanied by a Memorandum in Support, a Declaration in Support, and a list of Exhibits in Support. (ECF Nos. 283, 284, 285, 286). In the filings, Bush raises a number of claims attacking the validity of his conviction and sentence. Bush claims that his conviction and sentence are unconstitutional because he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution ("Sixth Amendment"). (ECF No. 284 at 4). In support of this contention, Bush identifies sixteen separate claims for relief. (*Id.* at 5-20). Bush also includes a "statement of facts," which largely consists of a series of legal claims. (*Id.* at 3-4). Due to the duplicative nature of a number of the claims asserted by Bush, the undersigned has identified the following thirteen discrete claims of ineffective assistance of counsel raised in Bush's filings:

1.    Failure to file a motion to suppress illegally obtained evidence.

2.    Improperly inducing acceptance of the plea agreement by providing the erroneous legal advice that doing so would bar unfavorable testimony.

3.    Failure to file request to withdraw from guilty plea.

4.    Improper inducement of guilty plea based on erroneous sentence estimate.

5.    Failure to advise Bush of improper joinder defense.

6.    Inducing Bush to plead guilty despite an insufficient factual basis.

7.    Failure to advise Bush regarding right to have a jury determine quantity of controlled substances attributable specifically to him.

12

8.    Failure to advise Bush of affirmative defense that one cannot conspire with a government agent.

9.    Failure to advise Bush of affirmative simple possession defense.

10.    Counsel had a conflict of interest.

11.    Failure to object to testimony which was self-incriminating.

12.    Failure to meaningfully test the United States' case.

13.    Appellate counsel failed to challenge inadequate factual basis of plea agreement.

 (ECF Nos. 188 at 3; 284 at 3-20). In Bush's Declaration in Support of his § 2255 petition, he asserts that he informed his attorney he had made several small sales of heroin, but that the United States would be unable to prove he distributed over 100 grams of heroin. (ECF No. 285 at 1). Bush asserts that when his attorney provided the plea agreement and accompanying stipulation of facts, Bush informed him that the factual allegations were untrue. (*Id*.). Bush states that the plea offer did not adequately inform him of his sentencing exposure under the Guidelines, and his attorney did not provide effective assistance in explaining what sentence Bush might receive if he agreed to plead guilty. (*Id*. at 1-2). Bush complains that his attorney told him certain witnesses would testify against him at trial, but did not explain the same witnesses also would be able to testify at his sentencing hearing. (*Id*. at 2). Bush asserts that he only agreed to plead guilty in order to avoid the testimony of those witnesses and because his attorney told him his Guidelines sentencing range would result in a recommended sentence of 7-9 years in prison. (*Id*.). Bush states that on August 2, 2017, after receiving a revised PSR which included a higher recommended Guidelines range, he sent a letter to Judge Chambers attempting to "fire" his attorney and withdraw from his guilty plea. Bush states he relayed this same message

to his attorney, but his attorney ignored his request for new counsel. (*Id.*). Bush asserts that Judge Chambers also either ignored, or never received, Bush's request for new counsel and to be released from his guilty plea, and instead proceeded with the sentencing on August 14, 2017. (*Id.*).

On November 9, 2018, the Court denied Bush's Motion for Return of Property, finding that the property in question did not belong to Bush. (ECF No. 291). On January 25, 2019, the undersigned issued a Memorandum Opinion and Order, directing Bush's trial counsel to file an affidavit in response to the allegations contained in Bush's § 2255 petition. (ECF No. 295). On February 28, 2019, Bush's trial counsel filed an Affidavit in response to the undersigned's order which was supplemented on April 12, 2019. (ECF Nos. 306, 330). In the affidavit, counsel asserts that Bush "makes numerous allegations which are simply incorrect and misstate the facts." (ECF No. 330 at 1). Specifically, counsel contests Bush's assertions that counsel did not discuss the case or possible defenses with Bush prior to the guilty plea, and did not adequately investigate the case. (*Id.* at 1-2). Counsel contends that Bush's allegations that he informed counsel of his desire to withdraw from his guilty plea and receive new counsel are false as Bush "fully understood the evidence against him and [was] determined to go forward with his guilty plea and with the sentencing hearing." (*Id.* at 2-3). Counsel further disputes Bush's statement that he was unaware certain witnesses would be testifying at his sentencing hearing, saying he and Bush collaborated on reviewing grand jury testimony of the witnesses in order to prepare for cross-examination questions at the hearing. (*Id.* at 3). Counsel states he was unaware Bush was dissatisfied with his representation until after counsel had filed Bush's notice of appeal at Bush's request. Counsel asserts that he believes Bush "had a full understanding of the potential range of sentences which could

14

be imposed upon him and made an informed decision to enter into the plea bargain presented to the Court as being in his best interest." (*Id.*).

On April 30, 2019, Respondent filed a Response to Bush's § 2255 petition, requesting that the petition be dismissed. (ECF No. 334). Respondent argues that Bush's allegations of ineffective assistance of counsel are directly contradicted by sworn statements he made at his plea hearing, and by the record as a whole. (*Id.* at 11-12). Respondent believes Bush's "motion is simply based upon his dissatisfaction with his sentence rather than any meritorious ground," and asks that Bush's motion be denied. (*Id.* at 15-16).

On July 29, 2019, Bush filed a Reply to Respondent's request for dismissal. (ECF No. 367). In the Reply, Bush reiterates his claims and asserts that because Respondent did not address the merits of a number of his legal arguments, they should be considered to have conceded the claims are factually true. (*Id.* at 2-16). Bush again requests an evidentiary hearing be held regarding his § 2255 petition. (*Id.* at 17).

## II.    **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan.

15

4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## III.    Discussion

As indicated, Bush's claims are based on alleged instances of constitutionally deficient performance by his attorney. These claims assert violations of the Sixth Amendment to the United States Constitution, which guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an

objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). A counsel's trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to ***incompetence*** under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011) (emphasis added).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance in the context of a guilty plea, a "petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59

17

(1985). The petitioner's "subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). In order to demonstrate prejudice therefore, a petitioner "must convince [the court] that the decision to go to trial 'would have been rational under the circumstances.'" *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket*, 208 F.3d at 190. Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

### 1. Failure to file motion to suppress

Bush argues that his attorney provided constitutionally deficient assistance due to

his failure to file a motion to suppress evidence that was seized in violation of the Fourth Amendment to the United States Constitution ("Fourth Amendment"). (ECF No. 284 at 5). Bush asserts that law enforcement officers searched his residence without a warrant and their subsequent discovery of 85 grams of heroin inside a "lady's purse" exceeded the scope of consent given by Bush. (*Id.* at 5-6). Bush asserts that if the motion had been filed, it likely would have resulted in the suppression of the evidence, and Bush would not have agreed to plead guilty. (*Id.* at 6).

While Bush provides scant details regarding the allegedly illegal search to which he objects, the record reveals that on May 23, 2016, law enforcement officers performed a search on a residence located at 729 Oxford Drive in Huntington, West Virginia, which uncovered 85 grams of heroin belonging to Bush. (ECF Nos. 122 at 7-8; 218 at 15, 19). As the record does not contain any other search that yielded 85 grams of heroin, this must be the search to which Bush believes his attorney should have objected.

At Bush's plea hearing, Detective Rosario testified regarding the investigation into Bush's criminal case. (ECF No. 218 at 16). Detective Rosario asserted that during the course of the investigation, he learned Bush was utilizing several residences to store controlled substances in furtherance of the conspiracy. (*Id.* at 18). Detective Rosario stated that law enforcement officers executed a search warrant on one such residence, located at 729 Oxford Drive, which belonged to Dorothy Pannell. (*Id.* at 19). The search returned 85 grams of heroin and several firearms. (*Id.*). Bush did not contest or respond to Detective Rosario's statement that the search was performed pursuant to a search warrant. To the contrary, Bush later affirmed that Detective Rosario's testimony was accurate. (*Id.* at 21). Furthermore, Bush confirmed at the plea hearing and in his stipulation of facts that the heroin and firearms seized at 729 Oxford Drive belonged to

him. (ECF Nos. 122 at 7-8; 218 at 15).

"Where a claim of ineffective assistance of counsel is based on counsel's failure to file a motion to suppress, the prejudice prong of *Strickland* requires that the movant establish that the motion would have been granted." *Floyd v. United States*, No. CIV.7:06-1084-HFF, 2008 WL 3925841, at *5 (D.S.C. Aug. 26, 2008) (citing *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir.2005)). Bush provides merely a conclusory allegation that the evidence in question was seized illegally and that a motion to suppress would have been successful, (ECF No. 284 at 6), which is insufficient to establish that Bush's attorney provided ineffective assistance of counsel. As an initial matter, the record does not support Bush's conclusory statement that the search which discovered 85 grams of heroin was performed without a valid search warrant. At the plea hearing, Detective Rosario testified that the search of the residence in question was performed pursuant to a valid search warrant. (ECF No. 218 at 19). Bush was present at this hearing but did not object to Detective Rosario's characterization of the search as taking place pursuant to a search warrant. Moreover, as previously stated, Bush took the stand following Detective Rosario's testimony and affirmed that Detective Rosario's testimony was "substantially correct." (*Id.* at 21).

As the record reflects, Bush's unsubstantiated allegation that the search in question was invalid and performed without a search warrant is contradicted by his statements made at the plea hearing. His contention that his attorney failed to investigate this potential defense is likewise contradicted by Bush's assertions made both at the plea hearing and in his signed plea agreement when he acknowledged that he had ample time to discuss the case with his attorney and was satisfied with his attorney's performance. (ECF Nos. 122 at 6; 218 at 3-4). "It is certainly reasonable for counsel not to raise

unmeritorious claims." *Truesdale v. Moore*, 142 F.3d 749, 756 (4th Cir. 1998) Accordingly, as the record does not support Bush's allegation that a motion to suppress the 85 grams of heroin seized in a search of 729 Oxford Drive was likely to succeed, Bush is unable to establish that his attorney provided ineffective assistance of counsel by declining to file a motion to suppress on these grounds.

Even assuming Bush's unsubstantiated charge that the search was performed without a warrant were true, he is still unable to show that the decision not to file a motion to suppress was objectively deficient. At the plea hearing, Detective Rosario testified that the residence located at 729 Oxford Drive belonged to Ms. Pannell. (*Id.* at 19). Bush later affirmed that Detective Rosario's testimony was accurate. (*Id.* at 21).

Bush states in his petition that the search which returned 85 grams of heroin was performed at his residence. (ECF No. 284 at 6). However, the record reveals that it was performed at a residence that was actually owned by a third-party. Bush merely used the residence as a place to store controlled substances. "It is well-established that a criminal defendant does not have standing to contest the search of a third party unless he can show he had a reasonable expectation of privacy in the area searched or the property seized." *United States v. Al-Talib*, 55 F.3d 923, 930 (4th Cir. 1995). "No expectation of privacy is created simply because one has 'a supervisory role in the conspiracy or joint control over the place or property involved in the search or seizure.'" *Id.* at 931 (quoting *United States v. Padilla*, 113 S.Ct. 1936, 1937 (1993). The Fourth Circuit has held that a defendant has no reasonable expectation of privacy in a third party's residence, which is utilized by the defendant in furtherance of a drug trafficking operation. *United States v. Gray*, 491 F.3d 138, 151-53 (4th Cir. 2007). Accordingly, as the record conclusively shows that the residence in question was not owned by Bush, and was used by him merely as a site to

21

store controlled substances in furtherance of his drug trafficking operation, Bush cannot demonstrate that a motion to suppress would have been likely to succeed.

Finally, even assuming that Bush's allegations, refuted both by the record and by Bush's own admissions, that the search in question was performed without a warrant *and* at a residence owned by Bush himself, Bush would still be unable to demonstrate that his attorney's performance was objectively deficient or that he suffered prejudice. Bush asserts that the 85 grams of heroin allegedly seized in violation of his Fourth Amendment rights was found in a "lady's purse." (ECF No. 284 at 6). The Supreme Court of the United States ("Supreme Court") has previously considered a similar case and determined that a defendant did not have standing to challenge the search of a purse owned by a third party, notwithstanding the defendant's decision to hid his drugs there. *See Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980) (dismissing the petitioner's claim that because he owned the drugs in question, he had a reasonable expectation of privacy in a purse owned by another). Accordingly, Bush is unable to demonstrate that a motion to suppress would have been granted based on the allegedly illegal search of a third party's purse located at a residence belonging to someone other than Bush. As Bush fails to show that his attorney's decision to forgo a motion to suppress was objectively deficient, and that such a motion would have been granted, the undersigned **FINDS** that Bush's claim of ineffective assistance of counsel on this ground is without merit.

### 2. Plea was induced by faulty legal advice.

Bush argues that his guilty plea is invalid as it was induced by his attorney's erroneous assertion that agreeing to plead guilty would bar testimony from certain witnesses. (ECF No. 284 at 6). Bush asserts that his attorney told him pleading guilty would "short-circuit" the witnesses' involvement and prevent them from testifying against

Bush "as a matter of public record." (*Id.*). Bush complains that despite his attorney's advice, the witnesses testified at the sentencing hearing, subjecting him to a "de-facto" trial without the procedural protections provided at a jury trial. (*Id.* at 6-8). Bush states that had his attorney not supplied this erroneous advice, he would have proceeded to trial in order to preserve his right to properly challenge hearsay evidence. (*Id.*).

In order to show prejudice based on an alleged error by an attorney, a petitioner must show that absent the attorney's error, there is a "reasonable probability" he would not have pled guilty and would have instead insisted on going to trial. *Burket*, 208 F.3d at 189. This prejudice prong is analyzed based on whether the decision to go to trial would be "rational under the circumstances," not based on the subjective preferences of a petitioner. *Dyess*, 730 F.3d at 361.

Bush does not clearly articulate how he believes his rights were violated by his attorney's alleged erroneous advice. Bush agreed to plead guilty. The fact that evidence of his guilt was then produced at sentencing does not amount to a constitutional violation. To the extent that Bush contends that he pled guilty solely to avoid the admission of testimony related to his guilt, this is simply an illogical argument. Put another way, it is not rational under the circumstances to base the decision to plead guilty on a belief that doing so will prevent the introduction of evidence establishing guilt, when, by the act of pleading guilty, the defendant admits guilt to all material elements of the crime.

The testimony at issue was introduced at sentencing to resolve a dispute over the drug quantity attributable to Bush for Guidelines sentencing purposes. Bush knew when he signed the plea agreement that the United States believed he was responsible for more drugs than the 700 grams he admitted to distributing. (ECF No. 122 at8). He also knew that the United States had reserved the right to present evidence and argument at the

sentencing hearing regarding the circumstances of the offense. (*Id*. at 5). Thus, Bush knew at the time he signed the plea agreement that the United States intended to present evidence of the drug quantity attributable to Bush whether he was convicted of the conspiracy by a jury, or was convicted by entry of a guilty plea. *See United States v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011) (confirming that the Government must prove the drug quantity attributable to a particular defendant at sentencing). Accordingly, Bush could not have rationally believed that pleading guilty would preclude testimony pertaining to his role in the conspiracy. Moreover, as it is routine practice to present testimonial evidence of relevant conduct at sentencing, it is difficult to believe that an experienced criminal defense attorney, such as Bush's attorney, would have advised Bush that no witness testimony would be offered. Indeed, counsel verifies in his affidavit that he explained to Bush prior to signing the plea agreement that the United States would try to establish a higher drug quantity at sentencing through the testimony of witnesses. (ECF No. 306 at 1-2).

Bush's argument that he pled guilty due to the erroneous belief that this would prevent the "public record exposure" of the testimony in question also does not provide a basis for prejudice. Whatever Bush's subjective beliefs, admitting guilt to a crime which carries a potential penalty of 40 years in prison is not a choice that is "rational under the circumstances" if done merely to avoid testimony reflecting poorly on oneself from entering the public record. *Dyess*, 730 F.3d at 361. In contrast, the likelihood of conviction and its associated consequences support the conclusion that rejecting the plea agreement and going to trial would not "have been objectively reasonable in light of all of the facts." *Fugit*, 703 F.3d at 260. The plea agreement provided a significant benefit in that it resulted in the dismissal of two substantive counts of distributing heroin, and one count

of possessing heroin with the intention to distribute it. (ECF No. 122 at 2). Each of these crimes carries a separate potential maximum penalty of 20 years in prison. *See* 21 U.S.C.A. § 841(b)(1)(C). Moreover, Bush's description of the witness testimony as a "mockery" and "sham" is not persuasive. The witnesses testified from personal knowledge about what they saw, heard, and did at Bush's direction to further his drug trafficking activities. Despite Bush's belief to the contrary, the core witness testimony was not inadmissible hearsay. Accordingly, if Bush had rejected the plea agreement, he would have proceeded to trial facing the probability of a conviction for the crime to which he pled guilty, without the benefit of an acceptance of responsibility reduction, and with the additional risk of being convicted of crimes carrying a combined maximum potential penalty of 60 additional years in prison.

Even assuming that Bush's attorney provided erroneous advice regarding the appearance of witnesses at sentencing, Bush's explanation as to how this alleged error induced him to plead guilty simply does not make sense and does not or support a finding that it would have been rational for Bush to proceed to trial absent this erroneous belief. Accordingly, the undersigned **FINDS** that Bush is unable to carry his burden on this claim of ineffective assistance of counsel.

### 3. Failure to file request to withdraw from guilty plea

Bush argues that his attorney provided constitutionally deficient performance when he failed to move to withdraw Bush's guilty plea prior to sentencing. (ECF No. 284 at 8). Bush asserts that he attempted to withdraw his guilty plea after learning that his sentence would likely be more than the 7-9 years his attorney told him he would receive. (ECF No. 285 at 2). Bush asserts that he prepared and mailed a letter to Judge Chambers on August 2, 2017, informing him of the "trickery involved to induce my guilty plea," and

requesting that Bush be allowed to withdraw his guilty plea and be appointed new counsel. (*Id*.). Bush states that although he also informed his attorney he wished to withdraw his guilty plea and receive new counsel, both Judge Chambers and his attorney ignored his request and continued with the sentencing hearing held on August 14, 2017. (*Id*.).

Bush is unable to show that his attorney provided constitutionally deficient performance based on this claim for several reasons. As an initial matter, Bush's assertion that he attempted to "fire" his attorney and withdraw his guilty plea prior to sentencing is not credible in light of the record. As explained more fully below, Bush's asserted reason for seeking to revoke his guilty plea—that being that he had been induced into pleading guilty based on the assurances he would receive a lighter sentence—is not credible in light of the many times Bush was directly informed his guilty plea could result in a much higher sentence than the one he ultimately received.

Furthermore, Bush's assertion that he was actively attempting to withdraw his guilty plea and fire his attorney prior to sentencing is contradicted by the evidence. Bush asserts that he sent a letter to the Court on August 2, 2017 asking that he be appointed new counsel. He attaches an exhibit that contains what is purportedly the second page of this letter. (ECF No. 286 at 2-3). Bush's sentencing hearing was held on August 14, 2017. Prior to beginning the hearing, the Court asked Bush's attorney "[i]s there any reason why sentencing should not take place today?" Bush's attorney responded "[n]o, your Honor." (ECF No. 207 at 3). Bush was present at the hearing and said nothing during this exchange. Certainly, if Bush was waiting on the Court to rule on Bush's request to withdraw his guilty plea and appoint a new attorney, he would not have stood idly by as the sentencing hearing proceeded. The Court then addressed Bush directly and asked him

26

if he had "read the [presentence] report and discussed it with your lawyer?" (*Id.* at 4). Bush responded affirmatively. The Court asked Bush if he understood the contents of the presentence report. Bush again responded affirmatively. (*Id.*). The PSR included a detailed summary of the offense conduct, a review of the grand jury testimony provided by the witnesses who testified at the sentencing hearing, the calculations showing that Bush was responsible for 26,272.46 kilograms of marijuana equivalency, and the conclusion that his Guidelines offense level was 37, with a criminal history category of III. (ECF No. 199). Consequently, before setting foot in courtroom on the day of his sentencing, Bush knew precisely what the United States intended to establish relative to his sentence. Once again, if Bush had filed a motion to withdraw his guilty plea, he undoubtedly would have raised his concerns right then and there. The fact that he did not do so significantly undermines his current contention.

Bush also attaches a letter dated August 15, 2017, the day after his sentencing hearing, in which he writes to Judge Chambers saying it is "strange you never received my prior letters when I explained to you that I was mislead and lied to from [sic] my counsel." (ECF No. 286 at 5). Judge Chambers responded to this letter on August 22, 2017, pointing out that that Bush expressed satisfaction with his attorney's services at the sentencing hearing, adding that Bush's requested relief could not be granted. (*Id.* at 12). Judge Chambers responded directly to all the letters Bush sent to the Court after the sentencing hearing, but gave no indication he had received any correspondence from Bush prior to the sentencing hearing. (*Id.*).

Bush's actions and statements at the sentencing hearing are entirely inconsistent with his claim that he was actively attempting to fire his attorney and withdraw his guilty plea, and they carry much greater evidentiary value than his *post hoc* contentions. The

27

affidavit submitted by Bush's trial counsel confirms what appears to be the truth; that Bush gave no indication he was dissatisfied with the attorney's performance until well after the sentencing hearing. (ECF No. 330 at 2-3).

In light of the evidence in the record, the undersigned **FINDS** that Bush's assertion that his attorney improperly refused to withdraw his guilty plea after being informed by Bush that he was seeking its revocation is not credible. Accordingly, Bush is unable to establish that his attorney provided objectively deficient assistance in failing to respond to this request.

In any event, even assuming that Bush's allegation that he asked to withdraw his guilty plea is true, Bush is unable to establish that he was prejudiced by his attorney's failure to do so. Bush claims that he wanted to withdraw his guilty plea because it had been improperly induced by his attorney's assurances that he would only face a sentence of 7-9 years in prison. (ECF No. 285 at 2). Bush believes that this "trickery in guideline calculation manipulation scheme" would have entitled him to withdraw his guilty plea had his attorney appropriately filed a request as instructed. (ECF No. 284 at 8-9).

Federal Rule of Criminal Procedure 11 authorizes the withdrawal of a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed .R. Crim. P. 11(d)(2)(B). A defendant has no "absolute right to withdraw a guilty plea," and must bear "the burden of showing a fair and just reason for withdrawal." *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000). "The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." *United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003). A district court should ordinarily confine the inquiry to "'whether the underlying plea was both counseled and voluntary.'" *Id.* (quoting *United*

28

*States v. Willis*, 992 F.2d 489, 490 (4th Cir.1993)). As the inquiry is confined to the voluntariness of the guilty plea, "a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." *Id.* This is because a properly conduced Rule 11 colloquy "must be recognized to raise a strong presumption that the plea is final and binding." *Id.* (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir.1992) (en banc)).

Bush cannot demonstrate prejudice based on his attorney's alleged failure to request to withdraw the guilty plea as he has not shown there is a "reasonable probability" such a request would have been granted. *Burket*, 208 F.3d at 189. Bush asserts that he wished to withdraw his guilty plea on the grounds that he had been mislead by his attorney's assurances he would receive a lighter sentence than he ultimately faced. (ECF No. 284 at 8-9). However, this would not provide a "fair and just" reason entitling Bush to withdraw his guilty plea.

At Bush's plea hearing, the Court specifically asked Bush if he understood that his guilty plea exposed him to "a maximum sentence of up to 40 years of imprisonment." Bush affirmed that he did. (ECF No. 218 at 22). Bush's attorney at the plea hearing also stated that by agreeing to plead guilty, Bush faced a maximum potential penalty of up to 40 years in prison. (*Id.* at 5). Bush's plea agreement stated that Bush would be exposed to a potential penalty of 40 years in prison, and further provided that the matter of sentencing was "within the sole discretion of the Court." (ECF No. 122 at 2, 5). Bush initialed each page of the plea agreement and signed an acknowledgement that he had "read and carefully discussed every part of" the plea agreement with his attorney. (*Id.* at 6). At the plea hearing Bush affirmed that he had gone over each paragraph of the plea agreement with his attorney. (ECF No. 218 at 9). Furthermore, the Court specifically

asked Bush if he understood that the Guidelines calculation had not yet been composed and that "the sentence I may impose could be different from any estimate your lawyer has given you." Bush asserted that he understood this was a possibility. (*Id.* at 23). The Court also warned Bush that while the Guidelines would be considered, it was possible Bush could receive a sentence harsher than that recommended by a Guidelines calculation. (*Id.* at 23-24). Bush asserted that he understood this risk and affirmed that he still wished to plead guilty. (*Id.* at 24, 28).

Accordingly, Bush's claim that he pled guilty believing he would face a prison sentence of only 7-9 years is contradicted by his own testimony at the plea hearing, by his attorney's statements at the plea hearing, and by the plea agreement Bush signed. Furthermore, the Court specifically informed Bush that, regardless of any estimate his attorney had provided, his guilty plea would expose him to a sentence of up to 40 years in prison. (*Id.* at 23-24). The Fourth Circuit has "specifically held that an allegation that counsel's predictions caused a defendant to believe he would receive a shorter sentence than that imposed is not a 'fair and just' reason for withdrawing the plea when the court corrects or clarifies at the Rule 11 hearing the range of punishment to which the defendant is subject." *United States v. Johnson*, 2001 WL 1188110 at *1 (4th Cir. 2001) (citing *Lambey*, 974 F.2d at 1395). Consequently, the Fourth Circuit has consistently declined to allow defendants to withdraw their guilty plea prior to sentencing based on an allegation their attorney provided misinformation regarding their sentence if the record shows that any such misapprehension was corrected by the court. *See United States v. Kerr*, 539 F. App'x 262, 265 (4th Cir. 2013) (unpublished); *see also United States v. Washington*, 233 F. App'x 280, 282 (4th Cir. 2007) ("Despite the erroneous advice of counsel concerning [appellant's] guideline range, at the plea hearing [appellant] was informed of the

maximum sentence he faced for each count, that the court could not calculate his sentence until the probation officer prepared the PSR, and that he could not withdraw his guilty plea if his sentence was harsher than he expected.") (unpublished); *United States v. Lipscomb*, No. 3:07CR64, 2008 WL 544862, at \*2 (W.D.N.C. Feb. 25, 2008) ("The Fourth Circuit has held that an attorney's miscalculation of the guideline range is not a fair and just reason to withdraw a plea when the court correctly advises the defendant of the statutory maximum.").

As Bush's stated reason for wanting to withdraw his guilty plea would not entitle him to revoke the plea, even if Bush's assertion that his attorney failed to file a motion to withdraw as requested is taken as true, Bush cannot demonstrate there is a "reasonable probability" he would have proceeded to trial in the absence of this error. *Burket*, 208 F.3d at 189. Accordingly, the undersigned **FINDS** that Bush's claim his attorney provided constitutionally defective assistance in failing to file a motion to withdraw the guilty plea cannot succeed.

### 4. Guilty Plea involuntary due to faulty sentence estimate

In his initial § 2255 petition Bush asserts that his attorney was ineffective because he advised Bush that his guilty plea would result in a sentence of only 7-9 years. (ECF No. 188 at 3). Bush repeats this allegation in the filings accompanying his supplemental § 2255 petition. (ECF No. 285 at 2). As in the context of providing a valid reason to revoke a guilty plea, however, an allegation that an attorney provided misinformation with respect to the expected sentence cannot establish that a guilty plea was involuntary when any such misinformation is corrected by the district court accepting the guilty plea. *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (because "the trial court properly informed [the defendant] of the potential sentence he faced, he could not be prejudiced

31

by any misinformation his counsel allegedly provided him."); *United States v. Ellerby*, 492 F. App'x 398, 400 (4th Cir. 2012) (petitioner could not demonstrate prejudice based on misinformation provided by attorney when district court correctly informed petitioner what sentence he might face by pleading guilty).

Here, as explained above, the Court informed Bush at his plea hearing that by pleading guilty he would be exposed to a potential 40-year sentence. The Court also specifically informed Bush that, despite any estimate given by his attorney, the Court was free to sentence Bush within that 40-year maximum, and Bush would be unable to withdraw his plea if he received a sentence harsher than expected. (ECF No. 218 at 21-24). Bush nevertheless agreed to plead guilty. Accordingly, his allegation that he was mislead by his attorney's assurance that he would receive a lighter sentence cannot demonstrate prejudice as any such prejudice was cured by the Court's admonishments. *See Hall v. United States*, No. CIV.A. 3:12-1039, 2013 WL 2407671, at *14 (S.D.W. Va. May 31, 2013). The undersigned thus **FINDS** that Petitioner's claim his plea was wrongfully induced by his attorney's incorrect Guidelines estimate should be dismissed.

### 5. Failure to advise Bush of improper joinder defense

Bush argues that his guilty plea was involuntary because his attorney failed to inform him of a valid defense of improper joinder. (ECF 284 at 9). Bush faults his attorney for misrepresenting the plea deal as a "bargain" with its dismissal of Counts Three, Eight, and Eleven, when those counts were improperly joined and could have been tried separately. (*Id.* at 9-10). Bush asserts that had he been aware this defense was available, he would not have agreed to plead guilty. (*Id.* at 10).

Bush was charged with conspiring to distribute over 100 grams of heroin and a quantity of oxymorphone. (ECF No. 1 at 1-2). He was also charged with three substantive

counts of knowingly possessing and distributing heroin. (*Id.* at 4, 9, 12). Pursuant to the plea agreement, the United States agreed to dismiss the substantive offense charges in return for Bush's guilty plea to the underlying conspiracy charge. (ECF No. 122 at 2).

Joinder of multiple charges against a defendant is authorized by Rule 8 of the Federal Rules of Criminal Procedure "if the offenses charged ... are [(1)] of the same or similar character, or [(2)] are based on the same act or transaction, or [(3)] are connected with or constitute parts of a common scheme or plan." *United States v. McLaurin*, 764 F.3d 372, 385 (4th Cir. 2014) (quoting Fed. R. Crim. P. 8(a)). The requirements for joinder are interpreted "flexibly, requiring that the joined offenses have a logical relationship to one another." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005) (internal quotation marks omitted). Thus, joinder is the "rule rather than the exception." *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (quoting *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir.1980)).

"A conspiracy is a distinct crime from the overt acts that support it." *United States v. Ambers*, 85 F.3d 173, 177-78 (4th Cir. 1996). Accordingly, the Supreme Court has held that a defendant may be prosecuted for overt acts taken in furtherance of an underlying conspiracy when those overt acts also constitute separate substantive offenses. *See United States v. Felix*, 503 U.S. 378, 389–90 (1992). The Fourth Circuit likewise has repeatedly upheld convictions for both conspiring to distribute controlled substances, and the substantive offenses of distribution and possession of those controlled substances. *See e.g. United States v. Walker*, 796 F.2d 43, 46 (4th Cir. 1986) ("Generally, a conspiracy to commit an offense and the substantive offense underlying the conspiracy are distinct crimes which do not merge into a single punishable act, and a defendant in a proper case can be prosecuted both for the conspiracy and the substantive offense."); *Ambers*, 85 F.3d

at 177-78.

"Just as '[i]t is certainly reasonable for counsel not to raise unmeritorious claims,' it is equally reasonable for counsel not to advise clients of unmeritorious defenses." *Fugit*, 703 F.3d at 260 (quoting *Moore*, 142 F.3d at 756). Because convictions, which were contained in the same indictment, for conspiring to distribute controlled substances, and discrete violations of the substantive laws prohibiting such distribution are routinely upheld in the Fourth Circuit, Bush's attorney did not provide deficient performance by declining to advise Bush regarding a misjoinder defense. Bush can additionally not show any prejudice resulting from this decision as a motion for severance would not have had a reasonable probability of succeeding. Accordingly, the undersigned **FINDS** that Bush's allegation his attorney's failure to advise him of a valid misjoinder defense should be dismissed.

### 6. Insufficient factual basis for conviction

Bush argues that his attorney was ineffective for advising Bush to plead guilty despite the lack of evidence of Bush's guilt. (ECF No. 284 at 13). While Bush characterizes this argument as consisting of several discrete claims, his claims all raise the same basic argument, that there was an insufficient factual basis for conviction, and that his attorney was ineffective for advising Bush to plead guilty despite this lack of evidence. (*Id.* at 10-14, 16-17). Bush believes he had a valid *corpus delicti* defense and that the United States' case rested on non-existent "ghost dope." (*Id.* at 12). He faults his attorney for not advising him of these defenses and asserts that had he been informed he could challenge the United States' lack of evidence, he would have gone to trial. (*Id.* at 16-17).

Bush asserts that his attorney failed to advise him the conspiracy charge was "barred by the *corpus delicti* rule," and that he would not have pled guilty absent this

failure. (*Id.* at 12). The *corpus delicti* doctrine is a common law rule which provides that "'a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused.'" *United States v. Rodriguez-Soriano*, 931 F.3d 281 (4th Cir. 2019) (quoting *United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008)). The rule applies only to *extrajudicial* uncorroborated confessions, however, and is not relevant when a defendant admits his guilt under oath in open court. *See United States v. Harding*, No. 7:13CR00008, 2013 WL 1832564, at *3 (W.D. Va. May 1, 2013).

"[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should ... dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221–22. Bush's assertion that he is factually innocent, and that his attorney was consequently ineffective by advising him to plead guilty is contrary to his testimony at the plea hearing where he stated that he was pleading guilty to the crime contained in Count One of the indictment because he was in fact guilty of conspiring with other individuals to distribute controlled substances. (ECF No. 218 at 12-13). Bush also expressly affirmed that he had gone over the stipulation of facts contained in his plea agreement with his attorney and that the facts contained therein were accurate. (*Id.* at 13-16). The Court specifically asked Bush if the stipulation that his participation in the conspiracy involved at least 700 grams of heroin was true, and Bush replied that it was true. (*Id.* at 15-16). Bush testified that he was entering into the guilty plea voluntarily, and that he had not been coerced into doing so. (*Id.* at 28). Bush confirmed that he was satisfied with his attorney's performance. (*Id.* at 3-4). Bush's sworn statements admitting guilt were corroborated by the testimony of Detective Rosario, as well as by the testimony of multiple witnesses at the sentencing hearing, who outlined Bush's prominent role in

the drug trafficking organization.

If Bush did not conspire with others to distribute drugs, then he should not have admitted to doing so. It is axiomatic that innocence is a valid legal defense to an alleged crime, and this defense is well-known to most people, even those who are not trained as lawyers. Bush attempts to attack the factual basis for his guilty plea under the guise of a claim of ineffective assistance of counsel. However, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992) *see also Estepp v. Ballard*, No. CIV.A. 3:08-0102, 2010 WL 3702594, at *7 (S.D.W. Va. Sept. 16, 2010) ("[W]hen evaluating a claim of ineffective assistance of counsel post guilty plea, statements made under oath affirming satisfaction with counsel are binding absent clear and convincing evidence to the contrary.") (citing *Blackledge v. Allison*, 431 U.S. 63, 97 (1977)). Bush's self-serving and unsubstantiated assertions that he is factually innocent of the crime to which he pled guilty, and that his attorney's failure to discover this fact made his guilty plea involuntary, fall well short of the requirement that he provide clear and convincing evidence sufficient to overcome his sworn statements made at the plea hearing. This conclusion is in line with decisions made by this Court, as well as other courts in this Circuit when considering similar challenges to a guilty plea. *See Borjas-Hernandez v. United States,* No. CIV.A. 3:12-8368, 2014 WL 1572803, at *10 (S.D.W. Va. Apr. 17, 2014) ("As discussed above, to the extent [the petitioner's] argument rests upon a claim of actual innocence of the conspiracy offense, it is foreclosed by the sworn statements he made as part of his guilty plea."); *see also United States v. Cline*, 286 F. App'x 817, 822 (4th Cir. 2008) (rejecting challenge to attorney's performance where contradicted by testimony at plea hearing that defendant was satisfied with attorney's

36

performance) (unpublished); *United States v. Holbrook,* 613 F. Supp. 2d 745, 765 (W.D. Va. 2009) (same).

Accordingly, Bush's claim his attorney provided ineffective assistance of counsel based on his failure to challenge the sufficiency of the evidence lacks merit as it necessarily rests on allegations which contradict Bush's earlier sworn testimony. As Bush's unsupported assertions to the contrary are unable to overcome his sworn statements affirming that he was in fact guilty of the conspiracy to distribute controlled substances, he is unable to show that his attorney provided deficient performance by advising him to plead guilty and by declining to challenge the sufficiency of the United States' evidence. The undersigned thus **FINDS** that this claim should be dismissed.

### 7. Right to have jury determine drug quantity.

Bush asserts that his attorney provided ineffective assistance by failing to advise Bush that he had a right to have a jury determine the quantity of controlled substances specifically attributable to Bush. (ECF No. 284 at 11). Bush contends that had he been advised of this right, he would have proceeded to trial as there was "no factual basis" for a jury to find Bush responsible for over 100 grams of heroin. (*Id.* at 11-12). Bush makes this bald statement notwithstanding his own concession in the plea agreement and at the plea hearing that his participation in the conspiracy involved **700 grams** of heroin. (ECF No. 218 at 15-16).

As explained above, Bush is unable to overcome the strong presumption of veracity afforded to statements made under oath during a plea hearing by cursory statements to the contrary which are unsubstantiated by any clear and convincing evidence. Bush claims that he would have proceeded to trial if he had known of his right to a jury determination of drug quantity, because he was factually innocent of the crime. However,

this assertion of factual innocence is directly refuted by his testimony at the plea hearing. Because Bush's claim "necessarily relies on allegations that contradict the sworn statements" made by Bush at the plea hearing, *Lemaster*, 403 F.3d at 221–22, he is not able to demonstrate prejudice. *See United States v. Taylor,* No. 3:08-CR-326, 2015 WL 4095845, at *5 (E.D. Va. July 7, 2015) (petitioner could not establish prejudice by arguing he would have gone to trial based on his innocence when refuted by statements made at plea hearing).

Moreover, the Court explicitly informed Bush that by pleading guilty he was forfeiting his right to a trial by jury and relieving the Government of its burden to prove his guilt beyond a reasonable doubt. (ECF No. 218 at 25-26). The rights that Bush forfeited by entering a guilty plea were fully explained to him. Nevertheless, he acknowledged his decision to plead guilty and forfeited those rights. (*Id.* at 28).

Regardless, Bush's attack on this ground is without merit, because even if he had proceeded to trial and received a jury determination of the drug quantity attributable to him, that finding would not have precluded the Court from considering a different drug quantity at sentencing. *United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010) ("But beyond establishing the maximum sentence, the jury's drug-quantity determination place[s] no constraint on the district court's authority to find facts relevant to sentencing."). As the *Young* court explains, the jury's determination sets the maximum sentence to which the defendant is exposed; however, the sentencing court must make relevant factual findings based on a preponderance of the evidence as a critical part of the sentencing process. *Id.* As such, "a district court may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense and the district court's

38

calculation is supported by sufficient evidence." *United States v. Ramirez-Maldonado*, 928 F.3d 702, 708 (8th Cir. 2019) (quoting *United States v. Webb,* 545 F.3d 673, 677 (8th Cir. 2008)). In Bush's case, a jury conviction on Count One exposed Bush to a statutory minimum sentence of five years and maximum sentence of 40 years. *See* 21 U.S.C. § 841(b)(1)(B)(i). Within those limits, the Court was free to set a Guidelines range commensurate with the drug quantity established at sentencing. *See, e.g., United States v. McShan,* 757 Fed. Appx. 454, 466 (6th Cir. 2018) (holding that binding precedent allows the district court to sentence a defendant on a drug quantity calculation that exceeds the jury's determination, as long as the sentence does not exceed the statutory maximum and is based on sufficient evidence—even if the drug quantity determined by the court includes conduct of which the defendant was acquitted) (citing *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008)); *United States v. Lopez-Esmurria*, 714 Fed. Appx. 125, 126 (3d Cir. 2017) (holding that "drug quantity was not an element of the crimes with which [the defendant] had been charged," and the District Court could determine the amount of drugs attributable to the defendant); *Brooks v. United States*, No. 2:16-CV-03207, 2019 WL 4054979, at *11 (S.D.W. Va. Aug. 27, 2019) (finding that "the determination of drug quantity for relevant conduct purposes under the guidelines is made by the court using a preponderance of the evidence standard, and not by the jury beyond a reasonable doubt.") (citing *United States v. Brooks,* 599 Fed. Appx. 85, 85-86 (4th Cir. 2015). Accordingly, the undersigned **FINDS** that Bush is unable to show prejudice resulting from his attorney's alleged failure to advise him of the right to have a jury determine the drug quantity attributable to him.

### 8. Affirmative defense based on inability to conspire with Government

Bush contends that his attorney provided ineffective assistance of counsel by

failing to advise Bush that he had an affirmative defense to the charges in the indictment because an individual cannot conspire with a government informant. (ECF No. 284 at 14). Bush asserts that had he been aware of this affirmative defense, he would have gone to trial and would not have entered the guilty plea. (*Id.* at 14-15).

It is true that if all the participants in an alleged conspiracy are government agents then no conspiracy exists, and a defendant cannot be convicted for conspiring with himself. *See United States v. Hayes*, 775 F.2d 1279, 1283 (4th Cir. 1985) (citing *United States v. Chase*, 372 F.2d 453, 459 (4th Cir.1967), *cert. denied*, 387 U.S. 907. The indictment charged Bush of conspiring with eight other individuals. (ECF No. 1 at 1-2). Bush has provided no evidence, and there is none in the record, to suggest that any, much less all, of these individuals were in fact government agents at the time Bush entered the conspiracy. To the contrary, as a number the co-conspirators named in the indictment were themselves later convicted of joining the conspiracy, it is definitively clear the conspiracy did not consist solely of government agents. *See e.g. United States v. Bush et al*, No. 3:16-cr-00227-3 (S.D.W. Va. 2016) at ECF No. 179.

Additionally, as pointed out by Bush's counsel in an effort to question the motive of their testimony, a number of the witnesses at Bush's sentencing hearing were likely co-conspirators with Bush. (ECF No. 207 at 41-42, 104-05). The fact that these witnesses later acted as government informants would not invalidate a conspiracy charge based on their participation in the conspiracy. *See United States v. Cousar*, 539 F. App'x 83, 86 (4th Cir. 2013) (government agent defense not applicable where co-conspirators became government informants *after* conspiracy formed) (unpublished). Accordingly, there is simply no basis to Bush's unsubstantiated argument that he had a valid defense to the conspiracy charge based on the rule that one cannot conspire solely with government

agents. *See e.g., Brown v. United States*, No. 2:11-CR-472-PMD, 2016 WL 53827, at *5 (D.S.C. Jan. 4, 2016) ("Even assuming one of those co-defendants was an informant, and thus was not a co-conspirator, Petitioner still could have been convicted of conspiring with any number of the other co-defendants."); *see also Baker v. United States*, No. 5:11-CR-237-D-1, 2017 WL 3084401, at *3 (E.D.N.C. July 19, 2017), *appeal dismissed*, 704 F. App'x 281 (4th Cir. 2017) ("A court must instruct the jury in this respect where the evidence supports a conclusion that the defendant conspired <u>only</u> with a government agent.").

If Bush is arguing that his attorney was ineffective for failing to investigate a defense based on the invalidity of a conspiracy involving only government agents with respect to the substantive distribution and possession charges which were dismissed, this claim also lacks merit. This defense is only applicable to conspiracy charges and would be of no avail to Bush with regard to the substantive offenses contained in the indictment. Accordingly, even if the substantive distribution and possession charges rested on controlled buys performed by government agents, Bush would still be guilty of those offenses. *See e.g. United States v. Ramos,* 462 F.3d 329, 334 (4th Cir. 2006).

As there was clearly no merit to investigating or raising a defense based on the principle that one cannot enter a conspiracy composed solely of government agents, Bush's attorney did not provide defective performance by declining to advise Bush of this defense. *Fugit*, 703 F.3d at 260. Accordingly, the undersigned **FINDS** that this claim should be dismissed.

### 9. Simple possession defense

Bush argues his attorney's performance was constitutionally defective due to his failure to inform Bush he had a valid simple possession defense. (ECF No. 284 at 15).

41

Bush believes that he had "a valid affirmative defense of simple possession" to the charge contained in Count Eleven and that his attorney could have requested a lesser included offense instruction prior to inducing Bush's acceptance of a guilty plea. (*Id.*). Bush asserts that had he been advised of this right, he would have proceeded to trial. (*Id.*).

Bush pled guilty to conspiring to distribute over 100 grams of heroin and a quantity of oxymorphone, but now argues he was entitled to a simple possession defense. Under certain limited circumstances, a defendant may be entitled to an instruction informing the jury that they may find the defendant guilty of the lesser-included offense of simple possession rather than the more serious offense of possession with the intent to distribute. *See United States v. Wright*, 131 F.3d 1111, 1112 (4th Cir.1997). However, "[a] defendant is not entitled to a lesser-included offense instruction as a matter of course." *Id.* In order to be entitled to a lesser included offense instruction, a defendant must show that "the proof of the element that differentiates the two offenses must be sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense." *Id.* (quoting *United States v. Walker*, 75 F.3d 178, 179 (4th Cir.1996)).

Bush provides no details to support his implausible assertion that he would have been entitled to a simple possession defense, while the record is replete with evidence that refutes this assertion. This "vague and conclusory" allegation is not enough to support a claim under § 2255. *Dyess*, 730 F.3d at 359. Bush himself admitted in open court that he was guilty of conspiring to distribute heroin and oxymorphone, and conceded that he was responsible for 700 grams of heroin. (ECF No. 218 at 12-13). A law enforcement official testified that an investigation revealed Bush was involved in a conspiracy to distribute heroin and a search of a residence returned 85 grams of heroin belonging to Bush. (*Id.* at

17-19). Multiple witnesses later testified at Bush's sentencing hearing that he was the leader of a drug conspiracy. (ECF No. 207). As there was substantial evidence that Bush trafficked heroin, a request for the inclusion of a simple possession defense instruction would have been exceedingly unlikely to succeed. *See United States v. Davis*, 383 Fed. Appx. 269, 276 (4th Cir.2010) (defendant not entitled to simple possession defense when record revealed indicia of drug trafficking); *United States v. Branch*, 1998 WL 911698 at *4 (4th Cir. 1998) (defendant possessing over 12 grams of heroin "itself sufficient to infer intent to distribute.") (unpublished). Trial counsel's decision not to inform Bush regarding a simple possession defense was thus a reasonable strategic decision that "falls within the wide range of professional assistance." *See Strickland*, 466 U.S. at 689.

Bush additionally cannot demonstrate any prejudice due to this alleged failure. Although Bush claims that he would have gone to trial had he known about the potential for a simple possession instruction, his asserted subjective preferences do not govern the prejudice analysis which is instead analyzed by considering whether proceeding to trial "would have been objectively reasonable." *Dyess*, 730 F.3d at 362. It would not have been objectively reasonable to proceed to trial based on the possibility of receiving a simple possession charge on Count Eleven. The indictment contained two charges of distributing heroin, in addition to the conspiracy charge in Count One and the possession with intent to distribute charge in Count Eleven. (ECF No. 1 at 4, 9, 11). If Bush went to trial, even assuming he would be able to successfully convince the jury he was guilty of mere simple possession on Count Eleven, he would still be exposed to two convictions with potential maximum penalties of 20 years in prison based on the two substantive distribution charges, *see* 21 U.S.C.A. § 841(b)(1)(C), and up to 40 years on the conspiracy charge. 21 U.S.C.A. § 841(b)(1)(B)(i). Accordingly, it would not have been rational to proceed to trial

based on this asserted simple possession defense. Not only did such a defense have little chance of success, but Bush still would have faced significant additional penalties based on the remaining charges.

As Bush is not able to demonstrate that his attorney's performance was objectively deficient for failing to inform him of a defense that was unlikely to succeed, and because even assuming the validity of the defense, Bush is unable to demonstrate prejudice, the undersigned **FINDS** that this claim should be dismissed.

### 10. Conflict of interest

Bush asserts that his attorney was operating under a conflict of interest and that Bush was accordingly denied the effective assistance of counsel. (ECF No. 284 at 17). Bush believes his attorney actively attempted to block Bush's attempts to revoke his guilty plea because if Bush was successful in his attempts, it would reveal his attorney's deficient performance and the "deception" he used to induce Bush's guilty plea, thus exposing his attorney to potential sanctions. (*Id.*). Bush asserts this conflict of interest adversely affected his attorney's performance at the sentencing hearing and on appeal. (*Id.* at 17-18).

The undersigned has already considered Bush's assertion that his attorney was actively resisting Bush's attempts to withdraw his guilty plea and receive new counsel prior to sentencing, and concluded that it is not credible in light of the record as a whole and Bush's behavior at the sentencing hearing. Bush's "vague and conclusory" allegation that his attorney "curtailed" Bush's efforts to withdraw his guilty plea is similarly not sufficient to raise a claim under § 2255. *Dyess*, 730 F.3d at 359. Bush provides no concrete facts in support of this allegation and no indication as to how his attorney attempted to sabotage his attempts to withdraw the guilty plea. Bush was not represented by his trial

counsel on appeal and, as explained below, his argument that he was adversely affected by his attorney's failure to object to testimony at the sentencing hearing is additionally without merit. Accordingly, the undersigned **FINDS** that this claim is without merit and should be dismissed.

### 11. Failure to object to testimony that was self-incriminating.

Bush contends that his counsel provided ineffective assistance for failing to object to testimony which was provided as part of a cooperation agreement between the United States and witnesses who testified at his sentencing hearing. (ECF No. 284 at 18). Bush argues that because § 1B1.8 of the sentencing Guidelines states that the United States may enter an agreement whereby it agrees not to punish a defendant for self-incriminating testimony, "[b]y the same force of logic," this testimony should not have been used to determine Bush's Guidelines range "as a matter of due process and equal treatment." (*Id*. at 18-19).

As an initial matter, Bush supplies no evidence, and there is none apparent in the record, that the witnesses who testified at Bush's sentencing hearing had entered into any such agreements. This makes little difference, however, as the argument clearly lacks merit. Section 1B1.8 of the Guidelines indicates that when the United States has entered into an agreement with a defendant who has agreed "to cooperate with the government by providing information concerning unlawful activities of others" in exchange for a promise that the United States will not use any self-incriminating evidence provided as part of this cooperation against the defendant, the United States may not use such self-incriminating evidence to calculate the defendant's Guidelines range. *See* U.S.S.G. § 1B1.8(a). This provision clearly does not operate to bar the use of such self-incriminating testimony against a third-party, as that would destroy the purpose of the provision, which

45

is to facilitate the ability of defendants to assist the United States in investigating the "unlawful activities of others." *Id.* Section 1B1.8 "prohibits the use of self-incriminating information disclosed pursuant to a cooperation agreement only in calculating the defendant's guideline range." *United States v. Malvito*, 946 F.2d 1066, 1071 (4th Cir. 1991). It certainly does not prevent the use of self-incriminating information in assessing the culpability of a third party. As there would be no merit to objecting to testimony provided at the sentencing hearing on this basis, Bush's attorney was not objectively deficient in declining to raise such an objection. *Moore*, 142 F.3d at 756.

Bush additionally argues that his attorney should have objected to this testimony because self-incriminating evidence is not reliable and using it to calculate his sentence was not "in conformity with the common law rule of *corpus delicti*." (ECF No. 284 at 19). This argument also plainly fails as the general probity of testimony admitted at sentencing does not serve as a basis to object to the testimony's admission. *See United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010) (because "the traditional rules of evidence are not applicable to sentencing proceedings," a district court may give weight to any testimony supported by sufficient indicia of reliability). As Bush identifies no grounds which would support objecting to the admission of the testimony, his argument that his attorney was ineffective for failing to challenge its admission is without merit. The undersigned therefore **FINDS** that this claim should be dismissed.

### 12. Failure to test the United States' case

In his next ground for relief, Bush argues that based on the preceding issues raised, he has established that counsel failed to effectively test the United States' case. (ECF No. 284 at 19). In support of his argument, Bush points to the fact that his trial counsel agreed to a number of stipulations. (*Id.*). Bush expressly adopted these stipulations at his plea

46

hearing, asserted he was satisfied with his attorney's performance, and stated that he was pleading guilty of his own volition. Bush cannot now disavow those statements made under oath absent a showing of extraordinary circumstances. *Lemaster*, 403 F.3d at 221–22. As explained above, Bush is unable to do this. Bush's unsupported assertions that his attorney was ineffective for allowing Bush to plead guilty despite a lack of evidence are refuted by the record and Bush's sworn testimony.

Moreover, the record does not show that counsel failed to test the United States' case. At the sentencing hearing, Bush's counsel consistently highlighted the lack of direct evidence provided by the witnesses testifying to the amount of drugs attributable to Bush, while simultaneously impeaching the credibility of the witnesses. As described above, despite the strong evidence amassed by the United States, Bush's counsel was able to secure the dismissal of three charges against Bush, which collectively exposed Bush to an additional 60 years in prison. Bush's counsel additionally submitted a lengthy sentencing memorandum in an attempt to secure a favorable sentence for Bush. (ECF No. 156). Accordingly, the undersigned **FINDS** that Bush's attorney did not fail to challenge the United States' case.

### 13. Failure of appellate counsel to challenge sufficiency of evidence

While Bush does not explicitly raise this argument as an independent claim for relief, he asserts that his appellate counsel failed to challenge the inadequate factual basis for the plea agreement. (ECF No. 284 at 4). This claim is unable to succeed for two reasons. First, Bush expressly waived his right to raise any challenge related to the sufficiency of the evidence on appeal. (ECF No. 122 at 4). His appellate attorney was therefore not ineffective by declining to raise such a challenge. Second, the undersigned has already considered Bush's claim challenging the sufficiency of the evidence and

47

determined that it lacks merit. Therefore, Bush cannot establish that his appellate attorney's decision to forego this claim was either objectively deficient performance, or resulted in prejudice. The undersigned thus **FINDS** that this claim is without merit.

In summary, the undersigned has considered all of Bush's claims and concluded that they clearly fail to state a claim which entitles him to relief; therefore, the undersigned **FINDS** that Bush's § 2255 petition should be dismissed.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 188), be **DENIED;** Movant's Supplemental Motion by to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 283), be **DENIED;** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: August 30, 2019

Cheryl A. Eifert
United States Magistrate Judge